VENABLE LLP
Jonathan L. Ko (SBN 321827)
*jlko@Venable.com*
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

VENABLE LLP
Frank C. Cimino, Jr. (*pro hac vice*)
*fccimino@Venable.com*
Megan S. Woodworth (*pro hac vice*)
*mswoodworth@Venable.com*
Jeffri A. Kaminski (*pro hac vice*)
*jakaminski@Venable.com*
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

*Attorneys for SAP America, Inc. and SAP SE*



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SAP AMERICA, INC.,

Plaintiff,

v.

CORENT TECHNOLOGY, INC.,

Defendant/Counterclaim Plaintiff.

v.

SAP AMERICA, INC. and SAP SE,

Counterclaim Defendants.

Case No. 8:26-cv-00237-JVS-DFM

**PLAINTIFF SAP AMERICA, INC.'S AND COUNTERCLAIM DEFENDANT SAP SE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS DEFENDANT CORENT TECHNOLOGY, INC.'S COUNTERCLAIMS**

Judge: Hon. James V. Selna
Date: September 21, 2026
Time: 1:30 p.m.
Courtroom: 10C

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. The '761 Patent ........ 2

B. The '893 and '136 Patents ........ 2

C. The '372, '591, and '876 Patents ........ 3

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 4

A. The '761 Patent Is Invalid Under 35 U.S.C. § 101 ........ 4

1. *Alice* Step One: Claim 1 of the '761 Patent is Directed to the Abstract Idea of Tracking Resource Usage of a Particular User ........ 5

2. *Alice* Step Two: Claim 1 of the '761 Patent Contains No Inventive Concept ........ 7

3. Claim 1 of the '761 Patent is Representative ........ 8

B. The '893 and '136 Patents Are Invalid Under 35 U.S.C. § 101 ........ 9

1. *Alice* Step One: Claim 1 of the '136 Patent is Directed to the Abstract Idea of Assigning Tasks to Resources ........ 9

2. *Alice* Step Two: Claim 1 of the '136 Patent Contains No Inventive Concept ........ 13

3. Claim 1 of the '136 Patent is Representative ........ 13

C. The '372, '591, and '876 Patents Are Invalid Under 35 U.S.C. § 101 ........ 14

1. *Alice* Step One: Claim 1 of the '372 Patent is Directed to the Abstract Idea of Using Identifiers to Translate Data Requests ........ 15

2. *Alice* Step Two: Claim 1 of the '372 Patent Contains No

Inventive Concept ........................................................ 19

3. Claim 1 of the '372 Patent is Representative ........................ 20

D. No Factual or Claim Construction Issue Prevents Resolution Now ........................................................ 21

V. CONCLUSION ........................................................ 22

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) ........ 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ........ 4, 5, 7, 9, 11, 13, 15, 19

*Appistry, Inc. v. Amazon.com, Inc.*, No. C15-311 MJP, 2015 WL 4210890 (W.D. Wash. July 9, 2015), *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1007 (Fed. Cir. 2017) ........ 10

*Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350 (Fed. Cir. 2024) ........ 12, 20

*BitTitan, Inc. v. SkyKick, Inc.*, No. C15-0754 RSM, 2015 WL 5081130 (W.D. Wash. Aug. 27, 2015) ........ 11, 18

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019) ........ 5

*Broadcom Corp. v. Netflix Inc.*, No. 3:20-CV-04677-JD, 2022 WL 3155410 (N.D. Cal. Aug. 8, 2022) ........ 10, 11

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) ........ 11

*Chewy, Inc. v. Int'l Bus. Machines Corp.*, 94 F.4th 1354 (Fed. Cir. 2024) ........ 5

*Coho Licensing LLC v. Glam Media, Inc.*, No. C 14-01576 JSW, 2017 WL 6210882 (N.D. Cal. Jan. 23, 2017), *aff'd sub nom. Coho Licensing LLC v. Oath Inc.,* 710 F. App'x 892 (Fed. Cir. 2018) ........ 10

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) ........ 8

*Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044 (Fed. Cir. 2017) .......... 6

*Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020) .......... 18, 19

*Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020) .......... 22

*Dynamic Ticket Sys. LLC v. Ticketmaster LLC*, No. LACV 24-00269 JVS, 2024 WL 3468324 (C.D. Cal. Mar. 25, 2024) .......... 1, 10, 16, 19

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) .......... 6, 8, 16

*Entropic Commc'ns, LLC v. DISH Network Corp.*, 767 F. Supp. 3d 1023 (C.D. Cal. 2025) .......... 10

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) .......... 10

*FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) .......... 5, 6, 8

*GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053 (Fed. Cir. 2026) .......... 1, 8, 20

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023) .......... 13

*Netflix, Inc. v. Broadcom Inc.*, 793 F. Supp. 3d 1168 (N.D. Cal. 2025) .......... 10

*PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021) .......... 16, 17, 18

*Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017) .......... 10, 13

*Pure Data Sys., LLC v. Ubisoft, Inc.*, 329 F. Supp. 3d 1054 (N.D. Cal. 2018) .......... 16

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) .......... 5, 8, 16, 20

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

*T-Jat Sys. 2006, Ltd. v. Expedia, Inc. (DE)*,
No. CV 16-581-RGA, 2018 WL 1525496 (D. Del. Mar. 28, 2018) .................. 17

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ........................................................... 4, 22

*Universal Electronics Inc. v. Roku, Inc.*,
No. 8:18-CV-01580-JVS-ADS, 2026 WL 1048230 (C.D. Cal. Apr. 2, 2026) ........................................................... 5, 6, 9, 16

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

# I. INTRODUCTION

Plaintiff SAP America, Inc. and Counterclaim Defendant SAP SE ("SAP") move to dismiss Defendant Corent Technology, Inc.'s ("Corent") counterclaims for infringement of U.S. Patent Nos. 8,326,876 ("'876 Patent"), 9,495,372 ("'372 Patent"), 10,305,761 ("'761 Patent"), 10,320,893 ("'893 Patent"), 10,824,591 ("'591 Patent"), and 11,019,136 ("'136 Patent") (collectively, "Asserted Patents") under Fed. R. Civ. P. 12(b)(6). All the Asserted Patents discuss the migration of computer systems from "single user" environments, where one user, or tenant, has isolated access to computer resources, to cloud-based environments where multiple users do. However, all claims of the Asserted Patents are invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

Specifically, the '761 Patent is directed to the abstract idea of monitoring, aggregating, and displaying computer resource usage data. The '893 and '136 Patents are directed to the abstract idea of planning and optimizing assignment of tasks to resources. The '372, '591, and '876 Patents are directed to the abstract idea of using identifiers to translate data requests. Although the patents purport to offer improvements for the cloud computing environment, the claims are written in exactly the type of "functional, result-focused language" that the Federal Circuit has repeatedly held does not "pass muster" under Section 101. *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1067 (Fed. Cir. 2026). And because none of the patents claim anything beyond well-known computer equipment performing their ordinary functions to carry out the abstract ideas, the claims also lack any inventive concept that could transform them into patent-eligible subject matter. *Dynamic Ticket Sys. LLC v. Ticketmaster LLC*, No. LACV 24-00269 JVS (PDX), 2024 WL 3468324, at *7 (C.D. Cal. Mar. 25, 2024). Accordingly, the Court should dismiss Corent's counterclaims.

## II. FACTUAL BACKGROUND

### A. The '761 Patent

The '761 Patent is titled "Multi-Application SaaS Metering Engine," and explains that with the move from single user computers to cloud-based systems where multiple users may access the same resource, there is a need "to monitor and/or monetize user's consumption of cloud resources and/or SaaS services." ECF No. 57-4 at 1:57-58. The patent describes and claims a system that measures user activities, identifies users and applications, aggregates data into "buckets," and provides summaries for accurate subscription billing and reporting.

The '761 Patent confirms that the claimed implementation is software running on ordinary computers. It describes generic "stored program instructions" executed by processors, standard monitoring of data streams, ordinary logging and quantization functions, and conventional billing and reporting services. It does not describe any new data-collection hardware, networking protocol, database structure, or technical mechanism for the claimed "engines." It instead describes standard SaaS metering and billing activities at a high level of generality, without specificity on how those functions are performed.

### B. The '893 and '136 Patents

The '893 and '136 Patents, both titled "Partitioning and Mapping Workloads for Scalable SaaS Applications on Cloud," share a common specification and claim the same basic concept. The specification explains that in order to move the local software to the cloud, the local software's requirements should be matched with the available cloud resources. ECF No. 57-1 at 1:51-59. To carry out this cloud migration, the patents describe grouping software modules ("workloads") into "partition groups" and mapping those groups to cloud instances to optimize performance.[1]

---

[1] The specification explains that a "'cloud instance' is a logical instantiation of a plurality of cloud resources logically grouped together by the system to ensure that



VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

Claim 1 of the '136 Patent is representative, and recites identifying workloads, creating partitions and sub-partitions, assigning partitions to cloud resources, constructing workload assignment maps, and ranking them based on rules. The patents describe "engines" for performing these claimed functions, but the patents describe what the "engines" do, rather than how they are implemented. *E.g.,* ECF No. 57-2 at 6:37-39 ("preferably the system automatically groups modules together in accordance with one or more [unspecified] rules."). The patents do not describe any improvement to cloud computing, virtualization, or resource scheduling technology. They instead describe a framework for making planning and deployment decisions using generic software modules on conventional computing systems.

**C. The '372, '591, and '876 Patents**

The '876, '372, and '591 Patents share materially the same specification and claim variations of the same concept. The '876 Patent, titled "Multi-Tenant Agile Database Connector," states that it is sometimes more advantageous to run a single instance of software on one server accessed by multiple users, than it is to run separate instances of the software on several computers. ECF No. 57-5 at 1:17-21. The specification identifies a need for transforming the single user application to have multi-user capability, without significantly altering the original software architecture. *Id.* at 2:24-27. The specification admits that this process is already known through the use of programming. *Id.* at 1:63-67 ("Chang teaches a method for converting a single-tenant application into a multi-tenant application"). The alleged solution concerns a connector module that sits between a non-tenant-aware application and a data repository so that the application can send requests "as if it is communicating with a single-tenant database," while the module translates those

all workloads in the selected partition share the same cloud resources, such as hardware, software and network resources." ECF No. 57-1 at 6:65-7:3.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

requests into tenant-aware requests as needed. ECF No. 57-5 at Abstract.

Whether written as a method or system, the claimed inventions are entirely functional, defined by what they do, not what they are or how they do it. For example, the claimed "agile database connector" is merely a translator and data handler performing routine computer functions of translating and passing data (e.g., commands). The patent does not describe any specific structure for the "agile database connector" or provide more specificity on how its translation or data handling is carried out. The specifications confirm that the other claim elements rely on existing computing infrastructure and standard connectors. ECF No. 57-5 at 5:18-23 ("well-known standards"); 7:22-30 ("any suitable identifier"); 9:38-42 ("any suitable network").

## III. LEGAL STANDARD

Determining whether claims are patent-eligible is a two-step inquiry. First, the Court determines whether the claims are directed to a patent-ineligible concept, such as an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). Second, if the claims are directed to a patent-ineligible concept, the Court asks whether the claim elements, individually or as an ordered combination, provide an inventive concept sufficient to transform the abstract idea into patent-eligible subject matter. *Id.* A § 101 motion may be resolved on the pleadings when the claims are understandable on their face and no concrete claim-construction dispute would change the analysis. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023).

## IV. ARGUMENT

### A. The '761 Patent Is Invalid Under 35 U.S.C. § 101

The '761 Patent is directed to the abstract idea of monitoring resource usage for an identified user, aggregating the information, and presenting or displaying a summary. Each of these resource tracking processes is a well-known and widely-practiced abstract idea. The '761 Patent contains no inventive concept, instead

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

claiming purely functional components with only result-oriented language.

### 1. *Alice* Step One: Claim 1 of the ’761 Patent is Directed to the Abstract Idea of Tracking Resource Usage of a Particular User

Claim 1 of the ’761 Patent is directed to a resource tracking process: “system for measuring a usage event of at least one computer resource,” “monitor a plurality of data streams,” “identify a first user who initiated an event captured by a portion of the . . . data streams,” “aggregate activity from the first user,” “generate a summary of the total activity,” and “present[] a representation of the generated summary.” The invention simply digitizes and automates a familiar usage-tracking and reporting process. The claim is directed to the same type of abstract information-processing workflow described and held abstract in *Universal Electronics Inc. v. Roku, Inc.*, No. 8:18-CV-01580-JVS-ADS, 2026 WL 1048230, at *5 (C.D. Cal. Apr. 2, 2026) (“UEI does not show how the technology improves the mechanism of storing, retrieving, transmitting, or testing code sets…. Instead, the invention improves the user’s experience by digitizing the workflow.”).

The Federal Circuit has repeatedly held that patented inventions involving tracking user activity, similar to the ’761 Patent, are directed to abstract ideas. *Chewy, Inc. v. Int'l Bus. Machines Corp.*, 94 F.4th 1354, 1368 (Fed. Cir. 2024) (holding that a method of tracking user activity that, according to the patent owner, was “more precise and requires less processing on the backend” was an abstract idea); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 884 (Fed. Cir. 2019) (holding that a method of tracking “highly specific information about the user” was an abstract idea); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (holding that “selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis”) is an abstract idea); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (holding that “collecting and analyzing information to detect misuse and

notifying a user when misuse is detected" was an abstract idea); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding that "collecting information, analyzing it, and displaying certain results" was an abstract idea).

The '761 Patent states the aggregated user data can be "filtered, sorted, and reported for accurate subscription billing," and that there is a need to "monitor and/or monetize user's consumption of cloud resources." ECF No. 57-4 at Abstract, 1:57-58. Tracking computer resource usage to create accurate billing is no different than tracking electric or water use, and is similarly abstract. *Elec. Power Grp.*, 830 F.3d at 1353 ("Information as such is an intangible . . . Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."). The fact that user data is aggregated by "zone" is analogous to calculating an electric or water bill for multiple users at a single address or business and does nothing to change the abstractness. The claim simply automates the manual processing of tracking resource usage. *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("automation of manual processes using generic computers does not constitute a patentable improvement in computer technology").

The claim does not recite any improvement to the functioning of the computer, but merely uses the computer as a tool to perform the general monitoring and aggregating resource usage functions. *FairWarning IP*, 839 F.3d at 1095 ("While the claimed system and method certainly purport to accelerate the process of analyzing audit log data, the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself").

Corent asserts that the '761 Patent solves a technological problem by being able to "measure and/or meter each user's use of any applications." ECF No. 57 at ¶ 88. But the solution is simply information tracking; there is no improvement to the functioning of any technology. In *Universal Electronics*, this Court found claims directed to automating a remote-control setup by collecting, analyzing, and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

displaying information to be abstract because the invention "does not improve technology," and instead operates by "digitizing the workflow." 2026 WL 1048230, at *4-6. The '761 Patent does the same thing in a SaaS-billing environment: it digitizes a familiar workflow of measuring a specific user's resource usage, aggregating total usage, and presenting a billable summary.

**2. *Alice* Step Two: Claim 1 of the '761 Patent Contains No Inventive Concept**

Nothing in the '761 Patent claims provides an inventive concept that is significantly more than the abstract idea itself. Claim 1's recited "engines" do not supply an inventive concept as they are merely functionally-defined components: a "metering engine" monitors data streams, an "identity engine" identifies a user, a "bucket aggregator" aggregates user activity, a "subscription engine" generates a summary of the aggregate activity, and a "rendering engine" presents a representation of the summary.

The specification admits that conventional components may be used: "language directed to a computer or a computer system should be read to include any suitable combination of computing devices, including servers, interfaces, systems, databases, agents, peers, engines, controllers, or other types of computing devices" that "exchange data using standardized protocols or algorithms." ECF No. 57-4 at 5:65-6:18. Each claimed "engine" is merely "stored program instructions . . . executed by a computer processor." *Id.* at claim 1. Neither the claims nor specification explain specifically how the engines operate, instead reciting that each engine is "configured" to produce a result without any detail or instruction. ECF No. 57-4 at 2:4-48 ("metering engine is preferably configured to measure . . . identity engine is preferably configured to identify . . . subscription engine is preferably configured to generate"). The Federal Circuit has repeatedly emphasized that

> it is not sufficient, in order to pass muster, for a claim to use functional, result-focused language or to encompass

> ordinary computers and networks to perform their ordinary functions in carrying out an abstract idea, even when narrowed to a particular use or environment (such as particular subject matter), without going further to require a specific implementation to improve how those functions are carried out.

*GoTV Streaming*, 166 F.4th at 1067-68 (collecting cases).

Here, as in those cases, the use of standard computing components does not provide an inventive concept. *E.g., SAP Am.*, 898 F.3d at 1169–70 ("these limitations require no improved computer resources [patent owner] claims to have invented, just already available computers, with their already available basic functions"); *Elec. Power Grp.*, 830 F.3d at 1355 ("the selection and manipulation of information . . . by itself does not transform the otherwise-abstract processes of information collection and analysis"). Nor does the application of these abstract ideas to the particular technological fields of cloud computing or "software as a service" provide any inventive concept. *FairWarning IP*, 839 F.3d at 1097 ("limiting the claims to the computer field does not alone transform them into a patent-eligible application").

### 3. Claim 1 of the '761 Patent is Representative

Where claims are "substantially similar and linked to the same abstract idea," this Court may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). That standard is met by the dependent claims here.

Claims 2-8 depend from claim 1, merely adding an unspecific sound (claim 2), resource throttling based on an unspecified threshold (claims 3 and 6), a user database (claim 4); or clarifying that the summary is a visual notification (claim 5), or that the "captured event" is an "application event" (claim 7) or an "external event" (claim 8). None of these limitations change the abstract nature of the claims or add any inventive concept; the claims still recite general user data tracking processes using conventional computer components, without any specific implementation to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

improve how those processes are carried out.

### B. The ’893 and ’136 Patents Are Invalid Under 35 U.S.C. § 101

The ’893 and ’136 Patents share a common specification and are both directed to the abstract idea of planning and optimizing assignment of tasks to resources: both recite identifying “workloads”—which according to the specification means a module of a software application—grouping them into partitions, and assigning each partition of workloads to cloud resources. Claim 1 of the ’893 Patent recites constructing a “migration plan” to migrate each workload to a set of cloud resources, whereas claim 1 of the ’136 Patent recites constructing and ranking a “plurality of workload assignment maps.”

Neither the ’893 nor the ’136 Patents contain any inventive concept. Claim 1 of the ’893 Patent recites generic functional technology: “a scanning engine,” “a partitioning engine,” “a mapping engine,” and “a rendering engine.” And claim 1 of the ’136 Patent recites no specific components at all.

#### 1. *Alice* Step One: Claim 1 of the ’136 Patent is Directed to the Abstract Idea of Assigning Tasks to Resources

Claim 1 of the ’136 Patent is directed to assigning application tasks to resources by grouping and assigning workloads to cloud resources. Claim 1 identifies workloads, partitions and groups the workloads, assigns the partitions to cloud resources based on characteristics, creates maps to assign each workload, and ranks the maps. These are abstract planning and optimization steps.

*Universal Electronics* rejects the idea that merely automating a manual process makes it technological. The claimed process there replaced a printed manual with interactive on-screen setup, digitizing a known workflow. 2026 WL 1048230, at *5. The ’893 and ’136 Patents likewise digitize a known planning function—an engineer or architect’s process of evaluating components, grouping them, mapping them to resources, and choosing among alternatives. As in *Universal Electronics,* that is “paper-to-pixels” planning. *Id.* at *4. Although performed in a computer

environment, the claims provide *no* detail on how the functions are carried out other than by using unspecified "workload" and "partition" rules.

Courts in this district and the Federal Circuit have consistently held this concept of assigning tasks to computer resources is an abstract idea. *Netflix, Inc. v. Broadcom Inc.*, 793 F. Supp. 3d 1168, 1188 (N.D. Cal. 2025) ("the abstract idea of allocating virtual machine work across a plurality of physical resources"); *Broadcom Corp. v. Netflix Inc.*, No. 3:20-CV-04677-JD, 2022 WL 3155410, at *1 (N.D. Cal. Aug. 8, 2022) ("the abstract idea of allocating tasks across a system of servers"); *Coho Licensing LLC v. Glam Media, Inc.*, No. C 14-01576 JSW, 2017 WL 6210882, at *5 (N.D. Cal. Jan. 23, 2017), *aff'd sub nom. Coho Licensing LLC v. Oath Inc.,* 710 F. App'x 892 (Fed. Cir. 2018) ("The patents-in-suit recite the abstract idea of distributed processing—merely splitting up a job into smaller pieces to be completed by multiple participating computers in the hierarchy"); *Appistry, Inc. v. Amazon.com, Inc.*, No. C15-311 MJP, 2015 WL 4210890, at *2 (W.D. Wash. July 9, 2015), *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1007 (Fed. Cir. 2017) ("patents-in-suit recite the abstract idea of distributed processing akin to the military's command and control system, a longstanding and intuitive practice used by many large hierarchical organizations"); *see also Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) ("controlling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable"); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017) ("the abstract idea of providing restricted access to resources") (internal quotations removed); *Dynamic Ticket*, 2024 WL 3468324, at *4 ("Using a credential or ticket to unlock something, or otherwise gain access to it, is an abstract idea"); *Entropic Commc'ns, LLC v. DISH Network Corp.*, 767 F. Supp. 3d 1023, 1035 (C.D. Cal. 2025) ("the abstract idea of sending a request for data, receiving responses to the request, and either (1) allocating resources based upon the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

responses; or (2) determining and transmitting data”).

*Broadcom v. Netflix* is highly instructive. In *Broadcom*, the claims were directed to “using rule statements and user-defined parameters to identify the best computer devices in a system to perform the job and to make decisions about how to distribute resources for different jobs.” 2022 WL 3155410, at *1. The Court found that this method of “allocating resources and tasks across a system” was a “quintessential abstract idea.” *Id.*

Here, claim 1 of the ’136 Patent performs a very similar function, breaking an application into workloads (“identifying workloads of a non-tenant-aware application”), and then using unspecified application, partition, or workload characteristics and rules to allocate computer resources (“assigning each partition of the workloads to a set of cloud resources”).

The fact that the ’136 Patent utilizes “cloud resources” rather than generic computer resources has no effect on this analysis. *BitTitan, Inc. v. SkyKick, Inc.*, No. C15-0754 RSM, 2015 WL 5081130, at *6 (W.D. Wash. Aug. 27, 2015) (“both email migration and the cloud are old concepts, existing well before the instant patent issued [January 20, 2015]”). Here, both the ’893 and ’136 Patent applications were filed (July 31, 2015, and May 23, 2019, respectively) after this date where cloud was an “old concept.” Regardless, the application of an abstract idea to a particular technological environment does not change the nature of the abstract idea. *Alice*, 573 U.S. at 222.

Corent’s pleading asserts that the ’136 and ’893 Patents solve two problems: (1) “migration of non-tenant aware applications to the cloud,” and (2) “orchestration and mapping of the migrated workloads.” ECF No. 57 at ¶¶ 67, 74. Neither represents a technological improvement, which must be ascertained by focusing on the claim language itself. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). The claims merely state that application workloads are identified, partitioned and grouped, assigned to cloud resources, and assigned maps that are

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

ranked. The claims fail to recite "how" any of these steps is performed. Claiming the desired result—better partitioning, mapping, ranking, or migration—without a concrete technological mechanism is a "well-settled indicator of abstractness."[2] *E.g., Beteiro, LLC v. DraftKings Inc.,* 104 F.4th 1350, 1356 (Fed. Cir. 2024) ("[T]he claims are drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results. Claims of this nature are almost always found to be ineligible for patenting under Section 101.").

Nor does the specification provide further details that would take this invention out of the abstract realm. As to Corent's first argument regarding cloud migration, the specification admits that this concept was known. ECF No. 57-1 at 5:64-6:6. The specification describes the claimed activity in result-oriented functional language without explaining any improvement to the technology itself. *Id.* at 2:37-39 ("assigning each workload arrangement to an appropriately matched computer resource"), 2:55-58 ("create a series of potential workload deployment options for dividing and assigning application workloads to all available cloud environments").

Similarly, as to Corent's second argument regarding "orchestration and mapping of workloads," the specification recites generic, functional language. ECF No. 57-1 at 2:40-41 ("mapping engine creates as many permutations of maps as is reasonably possible or permitted by a set of rules"), 2:51 ("maps generated by the mapping engine"), 7:33-34 ("creates cloud mapping patterns based on partition mapper rules"). Simply put, claim 1 of the '136 Patent does not solve any technological problem or improve the functioning of any computer system, it simply recites the abstract idea of assigning application tasks to computer resources.

---

[2] The specification describes "cost, scalability, performance and security" as important factors, but there is nothing in the claims that specifies how these factors are used to achieve a better outcome. ECF No. 57-1 at 1:66-2:2.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

### 2. *Alice* Step Two: Claim 1 of the '136 Patent Contains No Inventive Concept

Claim 1 of the '136 Patent does not provide any inventive concept, reciting purely generic technology to implement its abstract idea.

The specification admits that the claimed invention can use generic computer components. ECF No. 57-1 at 5:37-57 ("language directed to a computer or a computer system should be read to include any suitable combination of computing devices"). The use of "generic components employed in a customary manner" shows lack of inventive concept. *Prism Techs.*, 696 F. App'x at 1018.

Claim 1 of the '136 Patent recites no components, while claim 1 of the '893 Patent recites a "scanning engine," "partitioning engine," "mapping engine," and "rendering engine." These are all merely functional labels described in the specification only by the functions that they perform; the patent assumes the person of ordinary skill already knows how to implement them. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1355 (Fed. Cir. 2023) ("because the patent fails to disclose how to achieve the end result, a skilled artisan must be able to use routine and conventional methods to do so").

The specification likewise does not describe any inventive concept. The partition groups are formed based on a common characteristic: "for example all modules saved on the same computer system could be grouped together." ECF No. 57-1 at 6:36-40. The partitioner analyzes the application workloads and partitions them based on (unspecified) rules saved in a (generic) database. *Id.* at 7:13-17. The mapper similarly operates based on unspecified mapping rules. *Id.* at 7:29-35. And the specification provides no details as to how the reporting engine creates reports. *Id.* at 7:52-53.

### 3. Claim 1 of the '136 Patent is Representative

Claim 1 of the '136 Patent is representative of all claims of both the '136 and '893 Patents for the patent eligibility analysis. Both patents recite identifying

workloads, grouping them, assigning them to resources, generating a map or plan, and ranking or rendering it.

For the '136 Patent, claims 2-5 all depend from claim 1, and they provide limitations regarding the "application characteristics" (claims 2-3), the "characteristic of the set of cloud resources" (claim 4), and the "set of rules" (claim 5). These limitations are generic – they recite terms like "software components," "hardware components," "software dependencies," "hardware dependencies," "network characteristics," "user cost metric," "user efficiency metric," "security metric," "scalability metric."

For the '893 Patent, independent claim 1 is the system claim analogue to method claim 1 of the '136 Patent and shares the same abstract idea of assigning application tasks to resources, reciting generic engines for identifying, grouping, and partitioning workloads, and assigning partitions to cloud resources. *See* Exhibit 1; *see also Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("none of the recited hardware offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment'"). Claim 1 of the '893 Patent adds "a rendering engine that constructs a migration plan to migrate each of the workloads," but this is substantially similar to the "workload assignment maps" that are constructed and ranked in claim 1 of the '136 Patent. Dependent claims 2-6 of the '893 Patent all depend from claim 1, and add similar details as the dependent claims of the '136 Patent regarding the "application characteristics" (claims 2-3) and the "characteristic of the set of cloud resources" (claim 4). Claim 5 adds a "map database," and claim 6 adds an "analysis engine" that ranks the maps. None of the dependent limitations change the abstract idea nor provide any inventive concept.

**C. The '372, '591, and '876 Patents Are Invalid Under 35 U.S.C. § 101**

The '372, '591, and '876 Patents are directed to the abstract idea of using identifiers to translate data requests. All three patents recite translating non-tenant-

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

aware (or non-tenant-specific) commands from an application into tenant-aware (or tenant-specific) commands, based on a tenant identifier, for sending to a repository. These patents merely automate similar age-old command translations. For example, an analogous concept is a librarian being asked by a patron for books "on hold," which would require the librarian to find the patron's account based on the patron's unique identifier (name or library card) and then retrieve the appropriate books held for the patron. Another analogy is a customer asking a bank teller for items in the safe; the teller translates that request using the customer's unique identifier (driver's license or bank card) to determine the appropriate safe contents. The "non-tenant-specific" command of requesting "books on hold" or "items in the safe" is translated into a "tenant-specific" request for material unique to the requester based on the requester's identifier data such as their name or account number.

None of the '372, '591, or '876 Patents contain any inventive concept. The "agile database connector," "translator," "handler," "application," "repository," "non-application source," and "data collection module" are all generic components defined by what they do, rather than how they are implemented. The patents share materially the same specification, which admits the generic use of "servers, services, interfaces, portals, platforms, or other systems formed from computing devices." ECF No. 57-3 at 3:12-15. The specification states that these terms should be "deemed to represent one or more computing devices having at least one processor configured to execute software instructions stored on a computer readable tangible, non-transitory medium." *Id.* at 3:15-19.

**1. *Alice* Step One: Claim 1 of the '372 Patent is Directed to the Abstract Idea of Using Identifiers to Translate Data Requests**

Claim 1 of the '372 Patent recites a non-tenant-aware application, a non-tenant-aware data repository, and a tenant-aware non-application source with tenant identifiers. The claim also recites a translator, between the application and repository, which uses tenant identifiers to translate non-tenant-specific data access

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

commands from the application into tenant-specific data access commands. The claim further recites a handler, between the application and repository, which passes tenant-specific data access commands to the repository. The repository then sends the tenant-specific outputs to the application.

At its core, claim 1 recites receiving data access requests; identifying a tenant using external identity information; translating requests based on that identity; and routing requests. These are information-processing steps that are directed toward modifying requests for data based on the specific user, similar to those that the Federal Circuit has consistently held are abstract ideas. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (holding that using "content-based identifiers" to perform "data-management functions" was an abstract idea); *SAP Am.*, 898 F.3d at 1168 ("even if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract"); *Elec. Power Grp.*, 830 F.3d at 1353–54 (holding that "collecting information, analyzing it, and displaying certain results" is an abstract idea); *Dynamic Ticket*, 2024 WL 3468324, at *4 ("Using a credential or ticket to unlock something, or otherwise gain access to it, is an abstract idea").

In *Dynamic Ticket*, this Court held that "controlling and provisioning access," through "use of a credential to unlock an access control device," was an abstract idea. 2024 WL 3468324, at *4. Similarly here, the claim recites translating "non-tenant specific data access commands" into "tenant-specific data access commands" (i.e., controlling and provisioning access to data) using "unique tenant identifiers" (i.e., a credential that unlocks access).

Courts have also found that the specific act of data translation represents an abstract idea. *Universal Electronics*, 2026 WL 1048230, at *4 (holding that "processes that could be performed by a human being with a look-up table" are directed to an abstract idea); *Pure Data Sys., LLC v. Ubisoft, Inc.*, 329 F. Supp. 3d

1054, 1066 (N.D. Cal. 2018) (noting that "translating data into a new form" is an abstract idea); *T-Jat Sys. 2006, Ltd. v. Expedia, Inc. (DE)*, No. CV 16-581-RGA, 2018 WL 1525496, at *4 (D. Del. Mar. 28, 2018) (finding that a "structure that translates data between two incompatible pieces of hardware" is directed to the abstract idea of translation).

*T-Jat* is instructive. In *T-Jat*, the claims recited creating a "virtual client" between a cell phone and an internet application that allowed the phone user to access the application "without requiring specialized software or hardware on the telephone device." 2018 WL 1525496, at *3. However, the court agreed with defendant that the "virtual client" was "nothing more than a 'black box'" and the claims did not solve any technical problem regarding cell phone access to applications on remote services. *Id.* at *4.

Here, Corent asserts that the '372, '876, and '591 Patents solve the problem of adapting a single-tenant system to a multi-tenant system. ECF No. 57 at ¶¶ 81, 94, 101. Like the *T-Jat* "virtual client" that allows a cellphone to "access a variety of applications on remote servers," the asserted claims' "database connector" allegedly allows an application to access a variety of databases. ¶¶ 82, 95, 102.[3] But in both cases, the claimed solution is nothing more than a black box that "provides no details about *how* the claimed invention is achieved." *T-Jat*, 2018 WL 1525496, at *4.

*PersonalWeb* is also analogous. In *PersonalWeb*, the claims recited data access using content-based identifiers. 8 F.4th at 1315 ("the patents are directed to a three-step process: (1) using a content-based identifier . . . (2) comparing that content-based identifier against . . . [another]; and (3) providing access to, denying

---

[3] The generic nature of the "database connector" is evidenced by the fact that this term is modified in the '876 Patent to be an "interface module," that like the database connector includes a "handler" and a "translator" for performing virtually verbatim functions.



VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

access to, or deleting data"). The Court analogized the function to a library: "Librarians often locate books based on a 'call system' where they assign books unique identifiers based on call numbers." *Id.* at 1316.

Here, the identifier is tenant-based, but the same library analogy applies. A patron can make a non-patron-specific request such as "books on hold," and the librarian translates that into a patron-specific request for specific books based on the patron's identifier: their name or library card. As held in *PersonalWeb*, "[c]ontrolling access to resources" is an abstract idea. 8 F.4th at 1317. And as in *PersonalWeb*, the fact that these processes occur within a particular technological environment does not change that they are directed to the abstract idea of requesting and accessing data. *Id.* at 1316. As discussed above, the context of cloud technology is not new. *BitTitan*, 2015 WL 5081130, at *6.

"[T]o be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). This inquiry "often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* (cleaned up). Here, the purported improvement is allowing a non-tenant-aware application to request data in a tenant-aware manner without having to modify the application or database, but the specification admits that modifying the application was known in the art. ECF No. 57-3 at 2:1-6 ("Chang teaches a method for converting a single-tenant application into a multi-tenant application."). Thus, the purported "improvement" is using conventional computer components (interface module, data collection module, etc.) to move functionality that would be added to the application to an intermediary. And the claimed intermediary simply performs the abstract ideas of data collection ("receives a non-tenant-specific data access command," "receives a unique identifier"), data processing ("translates the non-

tenant-specific data access command"), and data retrieval ("returns a resulting data set"), using conventional components as a tool. *Customedia*, 951 F.3d at 1364 ("it is not enough, however, to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool").

The patents do not improve databases, connectors, or application functionality. They digitize a familiar gatekeeping process: confirm who is asking, decide what that person may access, and tailor the response accordingly. *Dynamic Ticket*'s digital will-call booth analogy is also apt here. In that case, the alleged novel "dynamic link" was the digital equivalent of requiring customers to pick up their tickets from a will-call booth. Here, the patents simply move a credential check into software, using a computer as a tool. That does not make the idea less abstract.

### 2. *Alice* Step Two: Claim 1 of the '372 Patent Contains No Inventive Concept

Claim 1 of the '372 Patent adds no inventive concept, instead reciting generic components such as an application, data repository, processor, "source," and an agile database connector comprised of a "handler" and "translator." No specific details about the translator or handler are recited; they are described purely by what they do, not by what concrete technology performs those functions or critically *how* it improves computer systems. ECF No. 57-3 at 3:57-4:11 ("a handler that analyzes the non-tenant-specific data access command . . . a translator that translates the non-tenant-specific data access command"). The agile database connector is also claimed by its function "to infer unique tenant identifiers from the tenant-aware non-application source." The specification also describes the agile database connector in functional terms for "translating non-tenant-specific data access commands into tenant-specific data access commands." *Id.* at 7:18-29.

The specification likewise only describes an "interface module" (corresponding to the agile database connector) and "data collection module," functionally. ECF No. 57-3 at 5:20-24 ("'data collection module' is a module that

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

collects data from a data repository"), 2:42-47 ("an interface module transparently handles non-tenant-specific data access commands"). And the database and application are admittedly conventional components. ECF No. 57-3 at 2:55-61 ("'data repository' is any repository of data, which includes databases, such as SQL Server®, Oracle®, and Microsoft Access®, data-gathering devices, and also includes sensors, cameras, user interfaces, and other computer systems"), 6:58-60 ("a prior art application installed on computer system").

The use of standard computing components does not provide an inventive concept. *SAP Am.*, 898 F.3d at 1169–70. The application of the abstract ideas of identifiers, translation, and data access in the context of a specific technological environment provides no inventive concept where the claim uses purely functional language to describe its purported invention. *GoTV Streaming*, 166 F.4th at 1067 (explaining that "functional, result-focused language…without going further to require a specific implementation to improve *how* those functions are carried out" will not "pass muster"); *Beteiro*, 104 F.4th at 1356 (noting that claims "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results . . . are almost always found to be ineligible").

**3. Claim 1 of the '372 Patent is Representative**

Claim 1 of the '372 Patent is representative because all claims of the '372, '591, and '876 Patents are directed to the same abstract idea of using identifiers to translate data requests, each reciting a translator between an application and data repository that translates non-tenant-specific data access commands into tenant-specific data access commands based on unique tenant identifiers. *See* Exhibit 2. Claims 2-12 of the '372 Patent all depend from claim 1. Claim 2 adds details regarding the identifier, reciting what information is received and used, but no explanation of how it is used is provided. None of the other claims, which are only directed to the types of data or application configuration generally, cure these

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

deficiencies. And the dependent claims add details or functions regarding the translator (claim 3), application (claims 4, 12), repository (claim 5), data access commands (claims 6, 8), handler (claims 7, 10, 11), and a database module (claim 9).

The ’591 Patent likewise claims using identifiers to tailor access to information, recited as method claims. Independent claim 1 adds “a data collection module that executes . . . data repository commands via a database connector,” but without specifying the structure for that module or how its function is carried out. Dependent claims 2-19 recite a “security access lookup table” (claims 2-3), decrypting (claim 4), “data items” and how they are transmitted (claims 5-6), a third data repository command (claim 7), a third tenant ID (claim 8), an algorithm (claim 9), details about how the repositories are not “programmatically modified” (claim 10), a plurality of databases (claim 11), a data gathering device (claim 12), a camera (claim 13), a UI (claim 14), configuring the translator (claims 15-16), an LDAP server (claim 17), a log-in module (claim 18), and a driver (claim 19). There is no specificity in these structures that suggests any unconventional structure or inventive concept.

The ’876 Patent claims are substantially similar. Independent claim 1 recites a memory, processor, repository, application, data collection module, and interface module with handler and translator. Dependent claims 2-20 recite a standard database connector (claims 2-3), real-time data (claim 4), the data access command comprising two commands (claim 5), a security access lookup table (claims 6-9), details about the translator (claims 10-12), additional subsets of data (claims 13-14), additional inputs (claim 15), a security certificate (claim 16), an encryption key (claims 17, 19), no encryption key (claim 18), and a second output (claim 20).

None of the claims of the ’591 or ’876 Patents alter the abstract idea or add any inventive concept.

### D. No Factual or Claim Construction Issue Prevents Resolution Now

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

The issue of patent eligibility is ripe for the Court's consideration because there are no legitimate factual or claim construction issues precluding resolution on the pleadings. *See Trinity Info Media*, 72 F.4th at 1360 ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced.").

Here, the claims and specification offer no inventive feature, reciting only generic components and abstract ideas about tracking usage of computer resources (for the '761 Patent), assigning tasks to resources (for the '893 and '136 Patents), and using identifiers to translate data requests (for the '372, '591, and '876 Patents). The components are all conventional or described with purely functional language. *See, e.g.*, ECF No. 57-2 at 5:37-57 ("language directed to a computer or a computer system should be read to include any suitable combination of computing devices, including servers, interfaces, systems, databases, agents, peers, engines, controllers, or other types of computing devices").

No claim construction is necessary to address the eligibility issue. As discussed above, the claim terms are generic and functional, reciting abstract ideas executed on conventional components. And as discussed above, these abstract ideas are unable to solve any "technological problems" as alleged by Corent. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) ("Any allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient.") (internal quotations omitted). Here, there is simply nothing in the claims that could create an issue for claim construction or discovery.

## V. CONCLUSION

For the foregoing reasons, SAP's motion to dismiss should be granted.

///

///

Dated: July 17, 2026

VENABLE LLP

By: /s/ *Jonathan L. Ko*
Jonathan L. Ko
Frank C. Cimino, Jr. (*pro hac vice*)
Megan S. Woodworth (*pro hac vice*)
Jeffri A. Kaminski (*pro hac vice*)

Attorneys for Plaintiff *SAP AMERICA, INC.* and Counterclaim Defendant *SAP SE*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiff SAP America, Inc. and Counterclaim Defendant SAP SE, certifies that this brief contains 6,987 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 17, 2026

/s/ *Jonathan L. Ko*
Jonathan L. Ko

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900